**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| Banfield Realty LLC,<br><br>Plaintiff,<br><br>v.<br><br>William E. Copeland; Jack Copeland; Kevin Copeland; Joseph P. Copeland; Roeseland Holdings 5, LLC; James W. Copeland; Country Motor Sales; Mountjoy & Carlisle, LLC d/b/a Olde Port Properties; George M. Carlisle; Jeffrey Mountjoy; Wayne Semprini; City of Portsmouth, New Hampshire,<br><br>Defendants. | Civil Action No. ____________ |

**COMPLAINT**

The Plaintiff, Banfield Realty LLC, by and through its attorneys Sheehan Phinney Bass & Green, Professional Association, complains against the above-captioned Defendants, as follows:

**Introduction**

1. In 2020, Plaintiff Banfield Realty LLC purchased the property located at 375 Banfield Road, Portsmouth, NH (the "Property") from several of the Defendants. On information and belief, the Property had formerly been used as a solid waste landfill, automobile repair shop, car-crushing facility, and salvage yard. Nevertheless, those Defendants and their realtor represented that any contamination at the Property had been completely remediated. In fact, however, those Defendants were aware that an environmental consultant had performed sampling and analysis of soils at the Property and documented the presence of contamination,

including heavy metals, polychlorinated biphenyls (PCBs), and asbestos – facts that the Plaintiff learned after its acquisition of the Property.

2. The Plaintiff has since learned that among the materials disposed of on the Property are waste building demolition materials deposited there by the City of Portsmouth in the 1970s during the City's urban redevelopment.

3. The Plaintiff is working with New Hampshire Department of Environmental Services ("DES") and the U.S. Environmental Protection Agency ("EPA") with regard to characterization of the historical contamination and cleanup of the site.

4. As articulated in detail below, this Complaint seeks damages and other remedies from the Defendants, arising out of, among other things, the misrepresentations and active concealment of the former owners and their realtor, and contamination of the Property by the former owners and operators of the Property and by the City.

## Parties

5. Plaintiff Banfield Realty LLC is a New Hampshire limited liability company with a principal office address of 304 Maplewood Avenue, Portsmouth, NH 03801.

6. Defendant William E. Copeland is an individual with a last known address of 26 Constitution Way, Dover, NH 03820.

7. Defendant Jack Copeland is an individual with a last known address of 245 Middle Street, Apartment #227, Portsmouth, NH 03801.

8. Defendant Kevin Copeland is an individual with a last known address of 4401 W. Verdugo Avenue, Apt. P, Burbank, California 91505-3369.

9. Defendant Joseph P. Copeland is an individual with a last known address of 142 Dennett Road, Kittery, ME 03904.

10. Defendant Roeseland Holdings 5, LLC is a New Hampshire member-managed limited liability company with a principal office address of 55 Elm Street, Effingham, NH 03882. James Copeland is identified with the NH Secretary of State as the LLC's Member. (Collectively, William E. Copeland, Jack Copeland, Kevin Copeland, Joseph P. Copeland, and Roeseland Holdings 5, LLC are referred to herein as the "Seller Defendants").

11. Defendant James W. Copeland is an individual with a last known address of 21 Moody Point Drive, Newmarket, NH 03857. (Collectively, William E. Copeland, Jack Copeland, Kevin Copeland, Joseph P. Copeland, and James W. Copeland are referred to herein as the "Copeland Defendants").

12. Defendant Country Motor Sales was a New Hampshire corporation with a principal office address at the Property, 375 Banfield Road, Portsmouth, NH. According to the New Hampshire Secretary of State's Corporations Division, Country Motor Sales was dissolved in 1989. On information and belief, some or all of the Copeland Defendants were shareholders at the time it was dissolved.

13. Defendant Mountjoy & Carlisle, LLC d/b/a Olde Port Properties ("Olde Port") was a New Hampshire limited liability company with a principal business office address at 26 Congress Street, Portsmouth, NH 03801. On February 22, 2022, James G. Noucas Jr., identified as Attorney-in-fact for Mountjoy & Carlisle, LLC, filed a Certificate of Cancellation of New Hampshire Limited Liability Company.

14. Defendant George M. Carlisle is an individual with a last known address of 18 Congress Street, Suite 502, Portsmouth, NH 03801. Carlisle was, on information and belief, a member of Mountjoy & Carlisle, LLC, and is made a defendant herein to the extent that RSA

304-C:144, IV(b) (which provides that a member of a dissolved LLC may be liable for a claim against the LLC if the assets of the LLC have been distributed to the members) applies.

15. Defendant Jeffrey Mountjoy is an individual with a last known address of 62 Orchard Street, Portsmouth, NH 03801. Mountjoy was, on information and belief, a member of Mountjoy & Carlisle, LLC, and is made a defendant herein to the extent that RSA 304-C:144, IV(b) (which provides that a member of a dissolved LLC may be liable for a claim against the LLC if the assets of the LLC have been distributed to the members) applies.

16. Wayne Semprini is an individual with a last known address of 35 River Road, New Castle, NH 03854. During the actions alleged herein, Semprini worked for Olde Port.

17. The City of Portsmouth is a municipal corporation with a principal address at 1 Junkins Avenue, Portsmouth, NH 03801.

## JURISDICTION AND VENUE

18. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district and because the Property that is the subject of this action is situated in this judicial district and 42 U.S.C. § 9613(b).

19. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction of this Court under 28 U.S.C. § 1367. This Court also has subject matter jurisdiction over the claim for declaratory relief pursuant to 28 U.S.C. §§ 2201-2202 and 42 U.S.C. § 9613(g).

## FACTS COMMON TO ALL COUNTS

### The Copelands' Ownership of the Property

20. William H. Copeland and Virginia A. Copeland, husband and wife, acquired the Property from Harry Zaitland and Irving Zaitland on September 3, 1963. See Warranty Deed (Book 1686 Page 128).

21. William H. Copeland conveyed his interest to Virginia A. Copeland by quitclaim deed dated March 15, 2001 (Book 3555 Page 0083).

22. When Virginia A. Copeland died on September 10, 2008, the Property passed to her sons Defendant William E. Copeland, Defendant Jack Copeland, Defendant Kevin Copeland, and James R. Copeland. See Estate of Virginia A. Copeland, 10th Circuit – Probate Division – Brentwood, Case No. 318-2008-ET-01202.

23. Subsequently, James R. Copeland died on June 4, 2018, and his interest in the Property then passed to his sons, Defendants Joseph P. Copeland and James W. Copeland. See Estate of James R. Copeland, 10th Circuit – Probate Division – Brentwood, Case No. 318-2018-ET-01138.

24. On May 7, 2019, Defendant James W. Copeland conveyed his interest in the Property to his LLC, Defendant Roeseland Holdings 5, LLC. See Quitclaim Deed (Book 5998 Page 2778).

25. In sum, the Copeland family owned the Property for nearly sixty years – from September 3, 1963 until the Plaintiff purchased it from the Seller Defendants on February 5, 2020.

**The Contamination of the Property and DES' Involvement**

26. The Plaintiff has since learned that the Property has been contaminated from multiple sources and releases, dating back several decades.

27. For example, on June 2, 2009, Defendant William E. Copeland, as Executor of the Estate of Virginia Copeland, submitted a Registration Form for Landfills Not Operated After July 9, 1981 to DES, reporting that, during the 1960s, building and construction waste was disposed of on the site by Defendant City of Portsmouth, as part of its urban renewal.

28. On information and belief, the Copelands operated an automobile salvage/crushing and recycling yard on the Property for decades. For example, on September 22, 1992, Defendant Jack Copeland submitted a Hazardous Waste Activity Notification Form to DES, identifying himself as the owner of Country Motor Sales, which operated on the Property and, which, according to the form, was a generator of hazardous waste, as well as waste petroleum naphtha, oil, and antifreeze. Similarly, according to the obituary for James R. Copeland (the father of Defendants Joseph P. and James W. Copeland), he was also a "co-owner" of Country Motor Sales.

29. According to an August 8, 2007 letter from DES, 444 tons of waste oil contaminated soil in the area of the former car crusher was removed from the site in June and July 2005.

30. According to the same 2007 letter, DES determined that the arsenic detected on site during Defendants' soil sampling appeared to be naturally occurring and not subject to DES regulation. After receiving payment from the Copelands for DES' cost recovery oversight activities, and based on the information available at that time, DES issued a Certificate of No Further Action on August 15, 2007.

31. Subsequently, however, additional information regarding contamination of the Property became available and various members of the Copeland family and their agents had extensive interactions with DES concerning contamination on the Property.

32. For example, on November 20, 2008, Ransom Environmental Consultants, Inc. submitted a Limited Subsurface Investigation Report to DES, concluding, among other things, that concentrations of arsenic, lead, and selenium all exceeded applicable standards; that PCBs and asbestos were detected at the Property; and that building materials and automotive parts were buried in the Lowland Fill Area.

33. On June 4, 2009, DES wrote to Defendant William E. Copeland, who, at that time, owned the Property with his brothers Defendant Jack Copeland, Defendant Kevin Copeland, and James R. Copeland. DES stated:

> [T]he [P]roperty will need further investigation with regard to the presence of a solid waste landfill. …
>
> Surface soil in the northern portion of the property (area around a previous auto crushing activity) contains polychlorinated biphenyls (PCBs), arsenic and lead in excess of the New Hampshire Soil Remediation Standards …. The presence of these contaminants above established standards requires additional characterization and/or remediation. … [A]t least one monitoring well will be required in this area. …
>
> Based on test pit data, the central portion of the property reportedly contains an apparent solid waste landfill (debris includes steel, concrete, brick, burned wood, auto parts (including engine blocks), concrete and entrained plaster and ceramic/porcelain, painted wood, asphalt, roofing, crushed 55-gallon drums, sheet metal, linoleum, a house radiator). …
>
> [T]here were soil samples which contained contaminants in excess of the NH S-1 standards for polynuclear aromatic hydrocarbons (PAH), arsenic and lead. Asbestos was reportedly observed in bulk soil samples. Also, groundwater in several wells in this central

> portion of the site contained concentrations of PAHs, arsenic, or lead above AGQS.
>
> … The asbestos must either be removed or … properly capped, and the site managed with an Activity and Use Restriction.
>
> … Sediment samples collected from wetland areas located along the southeastern and southern portions of the site indicate the exceedance of screening thresholds for arsenic, lead and mercury, thereby warranting further investigation….

34. On September 2, 2009, the engineering firm Provan & Lorber, "[o]n behalf of Mr. William Copeland," responded to DES, proposing a scope of work, to include monitoring wells and other analysis and testing. The letter requested a meeting with DES to discuss "what additional work and institutional controls may be appropriate for the site."

35. DES wrote to Defendant William E. Copeland on February 16, 2011, requiring the Property's owner to submit a work scope including, among other things, groundwater monitoring, sediment and surface water sampling, additional information concerning the PCB and lead contamination, and a report containing remedial alternatives for each impacted media.

**The Seller Defendants and Their Realtor Market the Property as Fully Remediated and, In Reliance, the Plaintiff Purchases the Property**

36. The Seller Defendants – each of whom knew or should have known of the Property's environmental condition – eventually determined to sell the Property and engaged Defendant Wayne Semprini, of Defendant Olde Port, as their realtor (collectively, Semprini and Olde Port are referred to herein as "Realtor Defendants").

37. On information and belief, the Seller Defendants authorized or consented to the Realtor Defendants acting on their behalf as representative in connection with the efforts to sell the Property. In attempting to sell the Property, the Realtor Defendants acted on behalf of the Seller Defendants.

38. Despite apparently not completing any of the work contemplated by DES, the Seller Defendants, through their agents, the Realtor Defendants, marketed the Property as fully remediated. For example, the Property's listing stated:

> `Investors and Commercial/Industrial End Users Take Note Rare Commercial/Industrial opportunity on 17 plus acres, conveniently located adjacent to Saint Patricks Academy on Banfield Road and the Portsmouth Community Campus. There are identified wetlands providing a building envelope of over 4 acres. Former Automobile Salvage Yard. Remediation has been completed and a CERTIFICATE OF NO FURTHER ACTION has been issued by the State of New Hampshire Department of Environmental Services. Certificate is in listing documents. Property may be purchased complete at list price or at a negotiated price subject to a sub division of existing buildings and land (approximately 1.5 acres) in the northeast corner. Said subdivision contingent upon obtaining city of Portsmouth approvals to sub divide. DO NOT INQUIRE WITHIN - Sign on property

39. What neither the Seller Defendants nor the Realtor Defendants disclosed was that, subsequent to that Certificate of No Further Action, the Seller Defendants and their agents had been engaged in significant communication with DES concerning substantial remaining contamination on the Property and site characterization and remediation that was required.

40. In short, other than stating in the listing that "[r]emediation has been **completed**" (emphasis added) – a statement that was false – the Seller Defendants and Realtor Defendants did not make any other disclosure about the environmental conditions of the Property at the time.

41. Moreover, by affirmatively making the false statement that remediation had been completed, including a Certificate of No Further Action that they knew was no longer the operative document concerning the Property, the Seller Defendants and Realtor Defendants induced the Plaintiff to rely on their misrepresentations to Plaintiff's detriment.

42. In reliance thereof, and unaware that the Property was contaminated, the Plaintiff purchased the Property from the Seller Defendants for $1,200,000.00.

43. If the Plaintiff had been aware of the true environmental condition of the Property, it either would not have purchased the Property or would have substantially discounted

the price it was willing to pay to account for the significant cost that would be required to remediate the contamination.

44. Since discovering the contamination present on the Property after acquiring it, Plaintiff has incurred – and continues to incur – significant consultants', engineers' and attorneys' fees associated with addressing the contamination. Moreover, the Plaintiff anticipates that DES and EPA will require substantial remediation efforts to be implemented, which will present further expense to the Plaintiff.

## COUNT I
## Recovery of Costs Under CERCLA § 107(a)
## (Against the Seller Defendants, James Copeland, Country Motor Sales, and City of Portsmouth)

45. The Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs.

46. The Property is a "facility," as defined by 42 U.S.C. § 101(9).

47. There have been releases of hazardous substances at the Property, which have necessitated and, in the future, will require the incurrence of response costs for cleanup and remediation under Section 107(a) of CERCLA (42 U.S.C. § 9607(a)).

48. On information and belief, each of the Seller Defendants, James Copeland, Country Motor Sales, and the City of Portsmouth, as detailed herein, (i) owned or operated the Property at the time hazardous substances were disposed there and/or (ii) by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances to the Property.

49. Accordingly, each of the Seller Defendants, James Copeland, Country Motor Sales, and the City of Portsmouth is strictly liable for all response costs incurred and to be incurred by Plaintiff in connection with the Property.

50. To the extent that Country Motor Sales has been dissolved and its assets distributed to the shareholders, if at all, pursuant to RSA 293-A:14.07 and its predecessor statutes, the Plaintiff is entitled to enforce a judgment on this claim against its shareholders, i.e., on information and belief, some or all of the Copeland Defendants.

**COUNT II**
**Declaratory Relief as to Future Costs Pursuant to CERCLA § 113(g)(2)**
**(Against the Seller Defendants, James Copeland, Country Motor Sales, And City of Portsmouth)**

51. The Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs.

52. There is a present and actual controversy between the Plaintiff and each of the Seller Defendants, James Copeland, Country Motor Sales, and the City of Portsmouth as to their respective rights and obligations with regard to CERCLA past, present, and future response costs associated with the Property.

53. Pursuant to 42 U.S.C § 113(g)(2), "the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages."

54. The Plaintiff is entitled to a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202 and 42 U.S.C. § 113(g)(2) for past, present, and future costs of assessment, containment, response, removal, and remediation arising from the presence of hazardous substances associated with the Property.

55. To the extent that Country Motor Sales has been dissolved and its assets distributed to the shareholders, if at all, pursuant to RSA 293-A:14.07 and its predecessor statutes, the Plaintiff is entitled to enforce a judgment on this claim against its shareholders, i.e., on information and belief, some or all of the Copeland Defendants.

**COUNT III**
**Contribution Pursuant to RSA 147-B:10**
**(Against the Seller Defendants, James Copeland, Country Motor Sales, and City of Portsmouth)**

56. The Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs.

57. The Property is a "facility," as defined by RSA 147-B:2, III.

58. On information and belief, each of the Seller Defendants, James Copeland, Country Motor Sales, and the City of Portsmouth, as detailed herein, (i) owned or operated the Property at the time hazardous waste or hazardous materials were disposed there and/or (ii) by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous waste or materials to the Property.

59. The Plaintiff has incurred, and will continue to incur, costs to cleanup and remedy environmental damage associated with the Property.

60. Pursuant to RSA 147-B:10, III(b), therefore, the Plaintiff is entitled to recover costs and/or contribution for expenditures it has incurred as a result of the contamination associated with the Property.

61. To the extent that Country Motor Sales has been dissolved and its assets distributed to the shareholders, if at all, pursuant to RSA 293-A:14.07 and its predecessor statutes, the Plaintiff is entitled to enforce a judgment on this claim against its shareholders, i.e., on information and belief, some or all the Copeland Defendants.

**COUNT IV**
**Declaratory Relief as to Future Costs Pursuant to RSA 147-B**
**(Against the Seller Defendants, James Copeland, Country Motor Sales, And City of Portsmouth)**

62. The Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs.

63. There is a present and actual controversy between the Plaintiff and each of the Seller Defendants, James Copeland, Country Motor Sales, and the City of Portsmouth as to their respective rights and obligations with regard to RSA 147-B response costs associated with the Property.

64. The Plaintiff is entitled to a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202 for past, present, and future costs of assessment, containment, response, removal, and remediation arising from the presence of hazardous wastes or hazardous materials associated with Property.

65. To the extent that Country Motor Sales has been dissolved and its assets distributed to the shareholders, if at all, pursuant to RSA 293-A:14.07 and its predecessor statutes, the Plaintiff is entitled to enforce a judgment on this claim against its shareholders, i.e., on information and belief, some or all of the Copeland Defendants.

**COUNT V**
**Contribution Pursuant to RSA 507:7-g**
**(Against the Seller Defendants, James Copeland, Country Motor Sales, and City of Portsmouth)**

66. The Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs.

67. The Seller Defendants, James Copeland, Country Motor Sales, and the City of Portsmouth are responsible to the Plaintiff for their proportionate share of any costs incurred, or to be incurred, as a result of the contamination associated with the Property.

68. The Plaintiff is entitled to recover costs and/or contribution for expenditures it has incurred as a result of the contamination associated with the Property.

69. To the extent that Country Motor Sales has been dissolved and its assets distributed to the shareholders, if at all, pursuant to RSA 293-A:14.07 and its predecessor statutes, the Plaintiff is entitled to enforce a judgment on this claim against its shareholders, i.e., on information and belief, some or all of the Copeland Defendants

**COUNT VI**
**Negligence *Per Se***
**(Against the Seller Defendants, James Copeland, Country Motor Sales, and City of Portsmouth)**

70. The Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs.

71. The Plaintiff is in the class of persons protected by RSA 147-A and 147-B, and related regulations.

72. The Seller Defendants, James Copeland, Country Motor Sales, and the City of Portsmouth – each of which was an owner, operator, generator, and/or transporter, or a person that arranged for the transport, of hazardous waste or materials at the Property – and each of which had a duty and obligation to adhere to all applicable statutes and regulations concerning the use and disposal of such wastes or materials.

73. Pursuant to RSA 147-A:9 and RSA 147-B:10, the Seller Defendants, James Copeland, Country Motor Sales, and the City of Portsmouth each had a duty to avoid the discharge, disposal, or other release of hazardous wastes or materials into the environment.

74. In violation of its statutory duties and obligations, the Seller Defendants, James Copeland, Country Motor Sales, and the City of Portsmouth each released or caused to be released contaminants into and onto the Property.

75. The Plaintiff has suffered damages as a result of the Seller Defendants', James Copeland's, Country Motor Sales', and the City of Portsmouth's breaches of their statutory duties and obligations.

76. The Plaintiff is entitled to compensation in the form of monetary damages, plus attorneys' fees and costs, for its damages suffered from the Seller Defendants', James Copeland's, Country Motor Sales', and the City of Portsmouth's breaches of their statutory duties and obligations.

77. To the extent that Country Motor Sales has been dissolved and its assets distributed to the shareholders, if at all, pursuant to RSA 293-A:14.07 and its predecessor statutes, the Plaintiff is entitled to enforce a judgment on this claim against its shareholders and/or their heirs, i.e., on information and belief, the Copeland Defendants.

**COUNT VII**
**Negligence**
**(Against the Seller Defendants, James Copeland, Country Motor Sales, and City of Portsmouth)**

78. The Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs.

79. The Seller Defendants, James Copeland, Country Motor Sales, and the City of Portsmouth owed a duty to the Plaintiff to ensure that the businesses and activities conducted on the Property in a manner so as to prevent the release of contaminants into and onto the Property.

80. The Seller Defendants, James Copeland, Country Motor Sales, and the City of Portsmouth breached that duty by causing and/or allowing the release and disposal of contaminants into and onto the Property.

81. The Plaintiff has suffered damages as a result of the Seller Defendants', James Copeland's, Country Motor Sales', and the City of Portsmouth's breaches of their duties.

82. The Plaintiff is entitled to compensation in the form of monetary damages, plus attorneys' fees and costs, for its damages suffered from the Seller Defendants', James Copeland's, Country Motor Sales', and the City of Portsmouth's breaches of their duties.

83. To the extent that Country Motor Sales has been dissolved and its assets distributed to the shareholders, if at all, pursuant to RSA 293-A:14.07 and its predecessor statutes, the Plaintiff is entitled to enforce a judgment on this claim against its shareholders and/or their heirs, i.e., on information and belief, the Copeland Defendants

**COUNT VIII**
**Fraudulent Concealment**
**(Against the Seller Defendants)**

84. The Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs.

85. The Seller Defendants, sellers of real estate, knew that the Property was contaminated and that the statement that "remediation has been completed" was false.

86. The Plaintiff did not know that the Property was contaminated and that the statement that "remediation has been completed" was false.

87. The falsity of the Seller Defendants' representation that "remediation has been completed" was not obvious and, accordingly, the Plaintiff was under no obligation to pursue an additional investigation into the representation. Particularly in light of the Seller Defendants'

active concealment of the true condition by stating that "remediation has been completed," the contamination was not easily observable. As such, the contaminated status of the Property was incapable of detection upon a reasonable inspection.

88. The contaminated status of the Property was dangerous to property or life.

89. The Seller Defendants had a duty to disclose the contaminated status of the Property.

90. The Plaintiff has suffered damages as a result of the Seller Defendants' breach of their duty to disclose, and active concealment of, the contamination.

91. The Plaintiff is entitled to compensation in the form of monetary damages, plus attorneys' fees and costs, for its damages suffered from the Seller Defendants' fraudulent concealment.

**COUNT IX**
**Fraudulent/ Intentional Misrepresentation**
**(Against the Seller Defendants)**

92. The Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs.

93. By stating that "remediation has been completed" and by attaching the 2007 Certificate of No Further Action, despite the fact that significant contamination was the subject of subsequent communications with and required actions by DES, the Seller Defendants misrepresented a material fact to the Plaintiff.

94. The Seller Defendants made that statement knowing that it was false or with conscious indifference to whether or not it was true.

95. The Plaintiff relied on the Seller Defendants' statement.

96. The Plaintiff, honestly believing the misrepresentations, justifiably relied upon it.

97. The Plaintiff has suffered damages as a result of the Seller Defendants' misrepresentations and omissions concerning the contamination.

98. The Plaintiff is entitled to compensation in the form of monetary damages, plus attorneys' fees and costs, for its damages suffered from the Seller Defendants' misrepresentations and omissions.

**COUNT X**
**Negligent Misrepresentation**
**(Against the Seller Defendants, the Realtor Defendants, Carlisle, and Mountjoy)**

99. The Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs.

100. When the Seller Defendants and the Realtor Defendants misrepresented the Property's condition, asserting falsely that it had been fully remediated, and failing to make disclosures about contamination that was the subject of DES action subsequent to the 2007 Certificate of No Further Action, the Seller Defendants and the Realtor Defendants acted negligently.

101. The misrepresentations were made for the purpose of inducing potential purchasers, including the Plaintiff, to act.

102. The misrepresentations and omissions were material, and the Plaintiff justifiably relied upon them.

103. The Plaintiff has suffered damages as a result of the Seller Defendants' and the Realtor Defendants' misrepresentations and omissions concerning the contamination.

104. The Plaintiff is entitled to compensation in the form of monetary damages, plus attorneys' fees and costs, for its damages suffered from the Seller Defendants' misrepresentations and omissions.

105. To the extent that Olde Port has been dissolved and its assets distributed to the members, if at all, pursuant to RSA 304-C:144, IV(b), the Plaintiff is entitled to enforce a judgment on this claim against its members, Defendants George M. Carlisle and Jeffrey Mountjoy.

**COUNT XI**
**Violation of Consumer Protection Act (RSA 358-A)**
**(Against the Seller Defendants, the Realtor Defendants, Carlisle, and Mountjoy)**

106. The Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs.

107. RSA 358-A:2 makes it unlawful "for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." The Plaintiff is a person within the meaning of RSA 358-A:2.

108. RSA 358-A:10 authorizes private causes of action for persons injured "by another's use of any method, act or practice declared unlawful by this chapter …." If the violation of the statute is willful or knowing, the court shall award damages in the amount of $1,000, or not less than 2 times, nor more than 3 times actual damages, whichever is greater, and attorneys' fees and costs. Id.

109. The Seller Defendants' and Realtor Defendants' deceptive and unfair conduct in connection with the sale of the Property, as described above, is conduct involving trade and commerce within this state that is unlawful under RSA 358-A:2.

110. The Seller Defendants' and Realtor Defendants' violation of RSA 358-A:2 was willful or knowing.

111. The Plaintiff was injured and sustained actual damages by the Seller Defendants' and Realtor Defendants' use of methods, acts, or practices that are unlawful under RSA 358-A:2.

112. The Plaintiff is entitled to treble damages, costs, and attorneys' fees based on the Seller Defendants' and Realtor Defendants' willful or knowing unfair method of competition or unfair or deceptive act or practice in the conduct of trade or commerce within this state.

113. To the extent that Olde Port has been dissolved and its assets distributed to the members, if at all, pursuant to RSA 304-C:144, IV(b), the Plaintiff is entitled to enforce a judgment on this claim against its members, Defendants George M. Carlisle and Jeffrey Mountjoy.

WHEREFORE, the Plaintiff Banfield Realty LLC respectfully requests that this Court:

A. Award it its damages pursuant to the claims articulated above;

B. Award it contribution and cost recovery pursuant to CERCLA and RSA 147-B;

C. Declare that it is entitled to recover past, present, and future costs of assessment, containment, response, removal, and remediation arising from the presence of hazardous substances, hazardous wastes, or hazardous materials on the Property;

D. Award it its damages, including treble damages, pursuant to RSA 358-A, along with its attorneys' fees, and costs; and

E. Grant such other and further relief as the Court deems necessary and just.

Respectfully submitted,

**BANFIELD REALTY LLC**

By Its Attorneys,

**SHEEHAN PHINNEY BASS & GREEN, P.A.**

Dated: __December 30, 2022___ By: ___/s/ Courtney H.G. Herz_________________

Courtney H.G. Herz, NH Bar No. 17114
Lynn J. Preston, NH Bar No. 18043
1000 Elm Street, P.O. Box 3701
Manchester, NH 03101
(603) 627-8131; (603) 627-8362
cherz@sheehan.com; lpreston@sheehan.com