UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Banfield Realty LLC,
        Plaintiff

        v.                              Case No. 22-cv-0573-SM
                                        Opinion No. 2023 DNH 128
William E. Copeland; Jack Copeland;
Joseph P. Copeland; Roeseland
Holdings 5, LLC; James W. Copeland;
Country Motor Sales; Mountjoy &
Carlisle, LLC d/b/a Olde Port
Properties; George M. Carlisle;
Jeffrey Mountjoy; Wayne Semprini;
City of Portsmouth, New Hampshire;
and Portsmouth Housing Authority,
        Defendants

**O R D E R**

This suit arises out of the sale of property located at 375
Banfield Road, Portsmouth, New Hampshire.  Plaintiff, Banfield
Realty, bought the property on February 5, 2020.  Shortly after
purchasing, Banfield discovered significant environmental
contamination.  It promptly filed suit, asserting claims under
the Comprehensive Environmental Response, Compensation and
Liability Act of 1980 ("CERCLA") and state law theories of
recovery, including claims based on negligence and negligence
per se.  Defendants City of Portsmouth ("Portsmouth") and
Portsmouth Housing Authority ("PHA") have moved to dismiss all
claims against them pursuant to Fed. R. Civ. P. 12(b)(6).
Plaintiff objects.

**Standard of Review**

When considering a motion to dismiss, the court accepts all well-pleaded facts alleged in the complaint as true, disregarding legal labels and conclusions, and resolving reasonable inferences in the plaintiff's favor.  See Galvin v. U.S. Bank, N.A., 852 F.3d 146, 155 (1st Cir. 2017).  To avoid dismissal, the complaint must allege sufficient facts to support a plausible claim for relief.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  To satisfy the "plausibility standard," the factual allegations in the complaint, along with reasonable inferences drawn from those allegations, must show more than a mere possibility of liability – that is, "a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  See also Lyman v. Baker, 954 F.3d 351, 359–60 (1st Cir. 2020) ("For the purposes of our 12(b)(6) review, we isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements.") (cleaned up).

In other words, the complaint must include well-pled (i.e., non-conclusory, non-speculative) factual allegations with respect to each of the essential elements of a viable claim which, if assumed to be true, would allow the court to draw the reasonable and plausible inference that the plaintiff is

entitled to the relief sought.  See Tasker v. DHL Retirement
Savings Plan, 621 F.3d 34, 38-39 (1st Cir. 2010).


**Background**

Accepting the amended complaint's factual allegations as
true – as the court must at this juncture - the relevant
background is as follows.  The dispute concerns property located
at 375 Banfield Road, Portsmouth, New Hampshire ("the
Property"), acquired by Banfield Realty from William E.
Copeland, Jack Copeland, Kevin Copeland, Joseph P. Copeland, and
Roeseland Holdings (the "Seller Defendants") on February 5,
2020, for $1.2 million.


Before the February, 2020, sale, the Property had been
owned by the Copeland family for nearly 60 years.  Over those 60
years, the Copelands used the Property as a solid waste
landfill, automobile repair shop, car-crushing facility, and
salvage yard.  As a result, the Property had a history of
environmental issues, including contamination, that triggered
the New Hampshire Department of Environmental Conservation's
involvement in remediation.  When the Property was sold to
Banfield Realty, the Seller Defendants represented that the
contamination had been entirely remediated.  Contrary to those
representations, however, the Seller Defendants knew that

building materials and automotive parts were buried on the
Property, and they were aware of the continued presence of
contaminants including heavy metals, polychlorinated biphenyls
(PCBs), and asbestos in the Property's soil.

After purchasing, Banfield Realty claims to have discovered
that the Property was "contaminated from multiple sources and
releases, dating back several decades."  Am. Compl. ¶ 27.  Two
of those sources, Banfield contends, were the City of
Portsmouth, and the PHA.  It says that, on June 2, 2009, William
E. Copeland (as executor of Virginia Copeland's estate)
submitted a Registration Form for Landfills Not Operated After
July 9, 1981, to the New Hampshire Department of Environmental
Services ("DES"), in which it reported that, during the 1960s,
"building and construction waste was disposed of on the site, as
part of the City of Portsmouth's urban renewal."  Id. at ¶ 28.
Plaintiff further alleges that both the City of Portsmouth and
the PHA were involved in Portsmouth's urban development, as the
PHA was created in 1953, and "many of its early projects
involved the urban renewal of Portsmouth."  Id. at ¶ 29.

Plaintiff's amended complaint references a Limited
Subsurface Investigation Report prepared by Ransom Environmental
Consultants, Inc., for the DES dated November 8, 2008 (the

"Ransom Report").[1]  According to the Ransom Report, arsenic,
lead, selenium, PCBs, asbestos, and other hazardous substances
were found on the Property, as well as "buried building
materials (including burned and partially burned wood, metal,
plaster and paint fragments, flooring, etc.)."  Pl.'s Obj. to
Portsmouth Mot. to Dismiss, Exh. A.  Samples taken from the
buried building and construction materials included detectable
asbestos.

Banfield Realty alleges that it has incurred significant
costs related to the contamination, and "anticipates that DES

---

[1]     Generally, a court must decide a motion to dismiss
exclusively upon the allegations set forth in the complaint and
the documents specifically attached, or convert the motion into
one for summary judgment.  See Fed. R. Civ. P. 12(2).  There is,
however, an exception to that general rule, as "[a] district
court may also consider 'documents incorporated by reference in
[the complaint], matters of public record, and other matters
susceptible to judicial notice.'"  Giragosian v. Ryan, 547 F.3d
59, 65 (1st Cir. 2008) (quoting In re Colonial Mortgage Bankers
Corp., 324 F.3d 12, 20 (1st Cir. 2003)) (alterations in
original).

        Plaintiff argues that the court may consider the findings
of the Ransom Report without converting this motion into one for
summary judgment because the Report is referenced in their
amended complaint (see Am. Compl. ¶ 34), and because the Ransom
Report is a public record, available on the NH DES's website.
Neither Portsmouth nor PHA object to the court's consideration
of the Report (although both parties take issue with plaintiff's
characterization of the Report's findings).  The Ransom Report
is sufficiently referenced in the amended complaint to merit
consideration in adjudicating defendants' motions.

and [the U.S. Environmental Protection Agency] will require substantial remediation efforts to be implemented," which will impose further costs and expenses on it. Id. at ¶ 46.

## Discussion

Banfield asserts seven claims against Portsmouth and PHA. It seeks recovery of costs and declaratory relief related to future costs under CERCLA, 42 U.S.C. § 9601, et. seq.; contribution and declaratory relief for future costs under New Hampshire Rev. Stat. Ann. 147-B; contribution under New Hampshire Rev. Stat. Ann. 507:7-g; and damages due to defendants' negligence per se and negligence.

### 1.   CERCLA and NH RSA 147-B

CERCLA "establishes a complex statutory scheme for responding to certain environmental hazards." Territory of Guam v. U.S., 141 S. Ct. 1608, 1611 (2021) (citations omitted).  It was "designed to promote the timely cleanup of hazardous waste sites and to ensure that the costs of such cleanup efforts were borne by those responsible for the contamination." Burlington No. and Sante Fe Ry. Co. v. U.S., 556 U.S. 599, 602 (2009) (internal quotations omitted).  CERCLA "imposes strict liability for the costs of cleanup on a party found to be an owner or operator, past operator, transporter, or arranger." U.S. v.

General Electric. Co., 670 F.3d 377, 382 (1st Cir. 2012)

(quoting U.S. v. Davis, 261 F.3d 1, 29 (1st Cir. 2001)).[2]


Four elements are "necessary for a prima facie case in a private-party lawsuit under CERCLA:

   1. The defendant must fall within one of four categories of covered persons. 42 U.S.C. § 9607(a).

   2. There must have been a 'release or threatened release' of a hazardous substance from defendant's facility. 42 U.S.C. § 9607(a)(4); § 9601(14), (22).

   3. The release or threatened release must 'cause[ ] the incurrence of response costs' by the plaintiff. 42 U.S.C. § 9607(a)(4).

   4. The plaintiff's costs must be 'necessary costs of response ... consistent with the national contingency plan.'  42 U.S.C. § 9607(a)(4)(B); § 9601(23)-(25).


Dedham Water Co. v. Cumberland Farms Dairy, Inc., 889 F.2d 1146, 1150 (1st Cir. 1989), decision clarified sub nom. In re Dedham Water Co., 901 F.2d 3 (1st Cir. 1990), (citations omitted).

---

[2]     "RSA 147-B:10, like CERCLA, gives a person who has incurred environmental response costs a right to contribution against a facility's prior owners and operators."  EnergyNorth Nat. Gas, Inc. v. UGI Utilities, Inc., No. CIV. 00-500-B, 2003 WL 1700494, at *2 (D.N.H. Mar. 28, 2003) (citation omitted).  Portsmouth's and PHA's arguments in support of their motions to dismiss plaintiff's N.H. RSA 147-B claims are identical to their arguments concerning CERCLA.

Portsmouth and PHA argue that plaintiff's CERCLA claims should be dismissed for two reasons.  First, they say, the amended complaint fails to establish the second element of a CERLCA claim: that the "building and construction waste" disposed of was a "hazardous substance."  Second, they argue that the amended complaint fails to sufficiently allege that Portsmouth or PHA fall within the four categories of covered persons under the statute.

(a)  "Hazardous" Substance

CERCLA defines a "hazardous substance" "by incorporation of certain lists of substances, wastes, and pollutants identified in a number of other environmental statutes," including the Clean Water Act, the Solid Waste Disposal Act, the Clean Air Act, and the Toxic Substances Control Act.  Com. of Mass. v. Blackstone Valley Elec. Co., 67 F.3d 981, 984 (1st Cir. 1995) (citing 42 U.S.C. § 9601(14)).  Pursuant to 42 U.S.C. § 9602(a), the EPA Administrator is required to "promulgate and revise regulations designating as additional 'hazardous substances' any substances which, 'when released into the environment may present substantial danger to the public health or welfare or the environment'."  Id.  Accordingly, the "EPA has codified a consolidated list of hazardous substances subsuming all of the

statutory lists incorporated by CERCLA."  Id.  See also 40
C.F.R. § 302.4.

Portsmouth and PHA argue that Banfield's amended complaint
fails to identify what the building and construction waste
consisted of, beyond that it was "building and construction
waste."  That allegation, they say, is plainly insufficient to
meet CERCLA's definition of a "hazardous substance," given that
not all building and construction waste is also "hazardous."  In
response, Banfield relies on the Ransom Report's finding that
arsenic, lead, selenium, PCBs, asbestos, and other designated
hazardous substances were found on the Property, and,
specifically, its finding that "asbestos was detected in 3 of 17
waste bulk building material samples. . ."  Pl.'s Obj. to
Portsmouth Mot. to Dismiss, Exh. A.  Banfield points out that
all of those substances are "hazardous" under federal law.

The amended complaint alleges that Portsmouth and/or PHA
disposed of construction waste and debris on the Property in the
1960s, and that later testing disclosed multiple substances
listed by the EPA as "hazardous substances," 40 C.F.R. § 302.4,
in that construction waste, including asbestos.  While meagre,
the amended complaint's allegations, together with the

information in the Ransom Report, are sufficient to withstand
Portmouth's and PHA's motion to dismiss at this early stage.


(b)  Covered Person

Portsmouth and PHA next argue that Banfield fails to allege
facts sufficient to support a finding that they committed any
acts required for liability under CERCLA.  Specifically, they
contend that Banfield's allegations concerning Portsmouth's
and/or PHA's involvement in the urban renewal of the city are
insufficient to support a finding that Portsmouth and/or PHA
"contracted, agreed, or arranged" for disposal of hazardous
materials.


Portsmouth and PHA are not wrong in arguing that the
allegations related to contracting, agreeing, or arranging for
the disposal of hazardous construction materials are sparse.
The amended complaint alleges that:

> 28.  . . . on June 2, 2009, Defendant William E.
> Copeland, as Executor of the Estate of Virginia
> Copeland, submitted a Registration Form for Landfills
> Not Operated After July 9, 1981 to DES, reporting
> that, during the 1960s, building and construction
> waste was disposed of on the site, as part of the City
> of Portsmouth's urban renewal.

> 29.  According to the Portsmouth Housing
> Authority's website, the City created the Housing
> Authority in 1953, and many of its early projects
> involved the urban renewal of Portsmouth.  Historical

> documents, including City Annual Reports, indicate
> involvement of both the City and the Housing Authority
> in the urban development of Portsmouth.

Banfield's allegations are broad and unspecific, but sufficient (albeit barely) to avoid dismissal at this point.

"Within the CERCLA scheme, arranger liability was intended to deter and, if necessary, to sanction parties seeking to evade liability by 'contracting away' responsibility." United States v. Gen. Elec. Co., 670 F.3d 377, 382 (1st Cir. 2012). Pursuant to Section 9607(a)(3), CERCLA liability attaches if an entity enters "into a transaction for the sole purpose of discarding a used and no longer useful hazardous substance." Burlington N. & Santa Fe Ry. Co. v. United States, 556 U.S. 599, 610 (2009). While plaintiff does not directly allege that Portsmouth or PHA disposed of building and construction waste on the Property, plaintiff does allege that building and construction waste from Portsmouth's urban renewal (waste that contained hazardous materials) was dumped on the Property. It is not unreasonable to infer, based on that allegation, that the waste was dumped in accordance with an agreement between Portsmouth/PHA (or its contractors and the Copelands. On that thin basis, Banfield has sufficiently — albeit barely — alleged that Portsmouth and PHA are liable as arrangers under Section 9607(a)(3).

Portsmouth's and PHA's motions to dismiss plaintiff's CERLCA and NH RSA 147-B claims against them are denied.[3]

2.  Negligence

To state a claim for negligence under New Hampshire law, a plaintiff must allege facts that show the defendant owed a duty, breached that duty, and that the breach caused the plaintiff harm. Yager v. Clauson, 169 N.H. 1, 5 (2016). "Whether a duty exists in a particular case is a question of law." Webber v. Deck, 433 F. Supp. 3d 237, 248 (D.N.H. 2020) (quoting Riso v. Dwyer, 168 N.H. 652, 654 (2016)).

In support of its negligence claim against Portsmouth and PHA, Banfield alleges that Portsmouth and PHA owed Banfield Realty a duty to "ensure that . . . businesses and activities [were] conducted on the Property in a manner so as to prevent

---

[3]   Portsmouth and PHA have also moved to dismiss plaintiff's claims for declaratory relief under CERCLA and N.H. Rev. Stat. Ann. 147-B, arguing that, because plaintiff has not stated a claim under either statute, there is no "active controversy." Because the court has determined that plaintiff has stated claims, that argument is unavailing.

For similar reasons, Portsmouth and PHA's motions to dismiss plaintiff's claim for contribution under N.H. Rev. Stat. Ann. 507:7-g are denied.

the release of contaminants into and onto the Property," and
that they breached that duty "by causing and/or allowing the
release and disposal of contaminants into and onto the
Property."  Compl. ¶¶ 81-82.  Portsmouth and PHA argue that
plaintiff's negligence claim must be dismissed because, at the
time of the alleged breach (purportedly in the 1960s), they did
not owe a duty to Banfield Realty (which did not exist until
January 27, 2020).  PHA and Portsmouth further argue that the
amended complaint fails to sufficiently allege facts that would
support a finding that PHA and/or Portsmouth breached any common
law negligence duty owed to Banfield.

Banfield does not directly address defendants' argument,
and instead counters that Portsmouth and PHA owed Banfield a
common law duty to avoid the intentional entry onto the
Property, which extends to the duty to remove things placed on
the Property (and, to the extent that the Property's prior
owners consented to Portsmouth's and PHA's entry into the land,
that consent was terminated when plaintiff purchased the
Property).  Plaintiff's argument is not persuasive.

The imposition of a legal duty results from weighing
certain policy considerations and determining that the
plaintiff's interests are entitled to legal protection against

13

defendant's conduct.  See Cui v. Chief, Barrington Police Dept.,
155 N.H. 447, 449 (2007) ("The determination of legal duty
focuses upon the policy issues that define the scope of the
relationship between the parties.  The relevant inquiry,
therefore, is whether the plaintiff's interests are entitled to
legal protection from the defendant's conduct, or at the
defendant's hands, against the invasion which has in fact
occurred.  The existence of a duty depends upon what risks, if
any, are reasonably foreseeable under the particular
circumstances.") (quotations, brackets, and citations omitted).

    The facts alleged by the plaintiff are somewhat unusual in
that the Property was purportedly contaminated (at least in
part) by Portsmouth's and PHA's disposal of hazardous debris
with the prior owner's permission.  Banfield cites no legal
authority directly on point, and the general research has not
identified any precedent analyzing facts substantially similar
to those presented here.[4]

---

[4]    Lewis v. General Elec. Co., 254 F. Supp. 2d 205 (D. Mass.
2003), is somewhat aligned.  In Lewis, property owners sued
General Electric, claiming negligence and trespass arising from
its disposal of fill dirt containing PCBs on the plaintiffs'
residential property.  Defendant moved for summary judgment on
the plaintiffs' negligence claims, arguing, inter alia, that the
deposit of the contaminated fill occurred prior to the
plaintiffs' ownership, and the claims were not assigned to the
plaintiffs as the current owners.  Id. at 214.  The court denied
defendant's motion for summary judgment, noting that a

Courts have, however, examined whether a landowner owes a duty to subsequent owners in the context of environmental contamination.  The majority of those courts have concluded that such a duty does not exist under common law.  See, e.g., Wilson Auto Enterps., Inc. v. Mobil Oil Corp., 778 F. Supp. 101, 104 (D.R.I. 1991); John Boyd Co. v. Boston Gas Co., 775 F. Supp. 435, 438 (D. Mass. 1991) ("landowner owes no common law duty to subsequent owners with respect to the manner in which the land had been maintained prior to sale"); Hydro-Manufacturing, Inc. v. Kayser-Roth Corp., 640 A.2d 950 (R.I. 1994) (former landowner cannot be liable for contamination of property under theories of negligence, strict liability, or nuisance).  Cf., Rolan v. Atl. Richfield Co., No. 1:16-CV-357-TLS, 2017 WL 3191791, at *17

---

tortfeasor should not be able to "escape liability by the happenstance of a property sale."  Id. at 215.

While the facts in Lewis are facially similar, they are distinguishable in two critical ways.  First, in Lewis, the prior owners were unaware that the fill dirt GE was providing contained PCBs.  Here, Portsmouth and PHA are alleged to have discarded construction and building debris with permission of the prior owners.  Second, as the Lewis court summarized, "GE did little to supervise either what was used as fill or where it went. [GE's] indifference persisted over the decades despite knowledge that the fill contained trash and PCBs, and despite growing knowledge, and eventually virtual certainty, that PCBs were hazardous."  254 F. Supp. 2d at 208.  Here, Banfield Realty does not allege that PHA or Portsmouth were at all aware that the construction and building debris deposited on the Property contained hazardous materials.

(N.D. Ind. July 26, 2017) (prior landowner owes no duty to
tenants of residential housing complex when no relationship
existed between prior owner and tenants; it was not foreseeable
that the land would be converted to residential housing at the
time prior owner was operating a factory on the land; and
"public policy does not weigh in favor of holding Defendant
. . . to a duty to future, unknown possessors of its own land.")
Those courts have generally reasoned:

> The imposition of such a duty would be unreasonable
> because such future owners may not be known or even
> contemplated at the time the landowner creates or
> maintains a condition on his or her property.
> Moreover, such a duty would unreasonably interfere
> with a landowner's right of ownership; the right to do
> so with his or her property as desired without
> liability so long as he or she does not interfere with
> the interests of others.

Sanyo N. Am. Corp. v. Avco Corp., No. 1:06-CV-0405 LJM WTL, 2008
WL 2691095, at *5 (S.D. Ind. July 3, 2008) (quoting Wickens v.
Shell Oil Co., No. 1:05-cv-645-SEB-JPG, 2006 WL 3254544, at *5
(S.D. Ind. Nov. 9, 2006)).  See also Wellesley Hills Realty Tr.
v. Mobil Oil Corp., 747 F. Supp. 93, 100 (D. Mass. 1990) (same).


    Portsmouth cites Read v. Corning Inc., 351 F. Supp. 3d 342
(W.D.N.Y. 2018), which is helpful.  In Read, plaintiffs filed
suit against Corning asserting claims arising out of Corning's
disposal of fill that contained hazardous substances, including

arsenic, cadmium, and lead.  At the time the fill was deposited,
the properties were owned by a predecessor-in-interest of
Corning; several years later, the properties were acquired by
plaintiffs.  Plaintiffs alleged that Corning was negligent "in
permitting the release of contaminants on the subject property,
in failing to warn the plaintiffs about the dangers resulting
therefrom, and in failing to remediate the contamination."  Id.
at 356.  The court granted Corning's motion to dismiss the
claim, noting that there was "no indication from the complaint
that the disposal of those materials, at that time, was unlawful
or unauthorized," and the complaint did not allege:

> that at the time Corning deposited the fill . . . it
> knew or should have known that the fill contained
> hazardous chemicals.  There are also no allegations
> that, at that time, Corning owed a duty to plaintiffs,
> which is not surprising, since plaintiffs did not
> purchase their properties until years later.

Id.

Given the allegations in the amended complaint, it would be
a substantial stretch to conclude that, by dumping building and
construction waste on privately-owned property, with the
permission of the Property's prior owners, Portsmouth and PHA
somehow breached a common law duty owed to Banfield Realty, a
subsequent owner of the Property some forty years later (and an
entity which did not exist at the time of the disposal).  If the

common law declines to impose a duty on prior owners of property to refrain from activity that may harm the Property with respect to the interests of future owners, the imposition of such a duty upon third parties who dispose of materials on the Property with permission of the prior owners, would also be highly improbable. The amended complaint fails to delineate a relationship between Portsmouth/PHA and Banfield Realty that might make it reasonably foreseeable that Portsmouth's or PHA's disposal of construction and building debris in the 1960s (again, with permission) would ultimately harm Banfield Realty, an entity that did not exist until several decades later.[5]

PHA's and Portsmouth's motions to dismiss Banfield Realty's common law negligence claim against them is granted.

### 3.   Negligence Per Se

For similar reasons, plaintiff's negligence per se claim against Portsmouth and PHA fails as a matter of law.

---

[5]    It bears mention that Banfield Realty is not without a remedy under federal and state law: both CERCLA and New Hampshire's statutory environmental law provide a potential remedy under circumstances like those described in this case.

Banfield alleges that, pursuant to New Hampshire Rev. Stat.
Ann. 147-A:9 and 147-B:10, Portsmouth and PHA had a duty to
avoid disposal of hazardous materials into the environment, and
breached that duty in violation of statutory duties and
obligations when they caused contaminants to be released onto
the Property.  Banfield notes that the operative question is
whether it could have maintained actions against Portsmouth and
PHA under the common law, not whether defendant owed a common
law duty of care, and contends that it could have maintained
actions under common law theories of nuisance and trespass.
Banfield misconstrues the applicable law and its argument is
unpersuasive.

Under New Hampshire law, the "doctrine of negligence per se
. . . provides that where a cause of action does exist at common
law, the standard of conduct to which a defendant will be held
may be defined as that required by statute, rather than as the
usual reasonable person standard." Marquay v. Eno, 139 N.H.
708, 713 (1995).  The New Hampshire Supreme Court has stated
that, when considering a negligence per se claim, courts must:

> first inquire whether the plaintiff could maintain an
> action at common law.  See Morris, The Role of
> Criminal Statutes in Negligence Actions, 49 Colum. L.
> Rev. 21, 21-22 (1949); Thayer, Public Wrong and
> Private Action, 27 Harv. L. Rev. 317, 329-31 (1914);
> see also Linden, Tort Liability for Criminal
> Nonfeasance, 44 Canadian B. Rev. 25, 27, 41 (1966);

Fricke, <u>The Juridical Nature of the Action Upon the Statute</u>, 76 Law Q. Rev. 240, 265 (1960).  Put another way, did the defendant owe a common law duty of due care to the plaintiff?  If no common law duty exists, the plaintiff cannot maintain a negligence action, even though the defendant has violated a statutory duty.

<u>Id</u>. at 714.  The court continued:

As a general rule, a person has no affirmative duty to aid or protect another.  <u>See</u> <u>Walls v. Oxford Management Co.</u>, 137 N.H. 653, 656 (1993). Such a duty may arise, however, if a special relationship exists.  <u>See, e.g.</u>, <u>Murdock v. City of Keene</u>, 137 N.H. 70, 72 (1993).  "The relation of the parties determines whether any duty to use due care is imposed by law upon one party for the benefit of another. If there is no relationship, there is no duty."  <u>Guitarini v. Company</u>, 98 N.H. 118, 119, (1953).

<u>Id</u>.  <u>See</u> <u>also</u> <u>Town of Londonderry v. Mesiti Dev., Inc.</u>, 168 N.H. 377, 384 (2015) ("Implicitly recognizing that a viable negligence claim requires the existence of a duty owed by the defendant to the plaintiff, <u>see</u> <u>Lahm v. Farrington</u>, 166 N.H. 146, 149 (2014), we explained in <u>Marquay</u> that the inquiry into 'whether the plaintiff could maintain an action at common law' is an inquiry into whether 'the defendant owe[d] a common law duty of care to the plaintiff.'") (quoting <u>Marquay</u>, 139 N.H. at 714).

As discussed <u>supra</u>, plaintiff has not sufficiently alleged the existence of a relationship between Portsmouth/PHA and Banfield Realty that would result in the imposition of a duty

upon Portsmouth/PHA.  Because no duty exists, plaintiff's negligence per se claim fails.  See Pruden v. CitiMortgage, Inc., No. 12-CV-452-LM, 2014 WL 2142155, at *19 (D.N.H. May 23, 2014) ("Negligence per se may establish the nature of a duty, but cannot establish the existence of a duty.").  Accordingly, PHA's and Portsmouth's motion to dismiss plaintiff's negligence per se claim against them is granted.


### Conclusion

For the foregoing reasons, as well as those set forth in Portsmouth's memoranda (documents no. 60-1 and 82) and PHA's memoranda (documents no. 65-1 and 86), Portsmouth's and PHA's motions to dismiss (document nos. 60 and 65) are **GRANTED** in part, and **DENIED** in part, as described herein.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

October 13, 2023

cc:  Counsel of record